UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS ALBERTO PENA

    Plaintiff,

v.                                                    Case No.: 8:23-cv-2475-TPB-LSG

MARTIN O'MALLEY,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    The plaintiff Carlos Alberto Pena seeks to overturn the denial of his claim for Social Security Disability Insurance ("SSDI") benefits. Doc. 17. Because I find that the Administrative Law Judge possessed substantial evidence and correctly applied the law, I recommend affirming the Commissioner's decision.

    **I.**    **Procedural Background**

    In 2022, Pena applied for a period of disability and disability insurance benefits. Tr. 11. The Commissioner denied the claim initially and on reconsideration. Tr. 11. An administrative hearing occurred, during which Pena appeared and testified. Tr. 11. The decision was unfavorable. Tr. 8. Pena sought review by the Appeals Council, which denied the request. Tr. 1-3. Pena timely filed a complaint in this Court, Doc. 6, and the case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Born in 1975, Pena was forty-six years old when his alleged disability resulting from post-traumatic stress disorder ("PTSD"), depression, anxiety, lower back pain, paranoia, insomnia, mood swings, and a left ankle fracture began. Tr. 14, 23, 265. Pena has a high school education. Tr. 23. Pena's history includes working as a park ranger, janitor, and tractor-trailer driver. Tr. 22.

The ALJ concluded that Pena satisfies the insured status requirements of the Social Security Act through December 31, 2023, and that Pena has engaged in no substantial gainful activity since June 30, 2021. Tr. 14. After a hearing and review of evidence, the ALJ determined that Pena has severe impairments, including degenerative disc disease, major depressive disorder, generalized anxiety disorder, and PTSD. Tr. 14. Nonetheless, the ALJ determined that Pena suffers no impairment or combination of impairments that "meets or medically equals" the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. The ALJ then concluded that Pena has a residual functional capacity to perform light work with the following limits:

> [T]he claimant can frequently climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch and crawl; can perform simple tasks; can have no interaction with the public; can have occasional interaction with coworkers and supervisors; and can perform work involving only simple work-related decisions, and few, if any, workplace changes.

TR. 17-18. In formulating Pena's residual functional capacity, the ALJ considered Pena's subjective complaints, as well as testimony from Pena and his wife. Tr. 18-19. The ALJ found that Pena's medically determinable impairments "could reasonably

be expected to cause the alleged symptoms." Tr. 18. However, the ALJ found that the statements of Pena and his wife were not entirely consistent with the medical and other evidence. Tr. 18. Considering Pena's impairments and the testimony of a vocational expert, the ALJ determined that Pena could not perform his past relevant work. Tr. 23. The vocational expert testified, however, that Pena could perform other jobs in the national economy, including as a marker, router, or collator operator. Tr. 24. Accordingly, based on Pena's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the ALJ found Pena not disabled. Tr. 24.

### III.  Standard of Review

Entitlement to SSDI benefits requires a "disability," which means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step "sequential evaluation process" to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is engaged in "substantially gainful activity," (2) has a severe impairment, (3) has a

severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) can perform the claimant's past relevant work, and (5) can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

This Court must affirm if substantial evidence and applicable law support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.   Analysis

Pena argues on appeal that several aspects of the ALJ's opinion lack substantial evidence, including the ALJ's assessment of Pena's inability to interact with others, of Dr. Villaverde's expert opinion, and of Pena's subjective complaints.

### a.  Pena's ability to interact with others.

SSA regulations require the use of a "special technique" when evaluating a mental impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a. This involves assessing how the claimant's mental impairment impacts (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The SSA employs a five-point scale in the functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). When considering a claimant's mental impairment, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of impairment for each functional area. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Pena asserts that the ALJ improperly assessed his ability to interact with others by relying on the observations of Pena's treating providers and his own observation of Pena during the hearing. Tr. 16-18. Based on these observations, the ALJ found that Pena was only moderately limited in interacting with others. Tr. 16. Pena argues that neither the "domain" of "interacting with others" in the "Listings,"

5

20 C.F.R. Pt. 404, Subpt. P, App. 1, nor Eleventh Circuit precedent (specifically, *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F. 4th 1094, 1107 (11th Cir. 2021)), supports relying on this type of evidence to assess one's ability to interact.

As the Commissioner correctly observes, *Simon* is unhelpful here. In *Simon*, the ALJ rejected a treating physician's opinion as inconsistent with other observations in the claimant's medical records. 7 F.4th at 1106-07. Although *Simon* noted the difference between the "relaxed, controlled setting of a medical clinic and the more stressful environment of the workplace," *Simon*'s holding centers on the rejection of expert testimony. *Id.* at 1097. Nothing in *Simon* holds that an ALJ cannot consider the observations of treating medical providers in assessing a claimant's ability to interact with others in the workplace.

An ALJ may consider a claimant's appearance and demeanor during a hearing. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). However, an ALJ must not "impose his observations in lieu of a consideration of the medical evidence[.]" *Id.* Here, the ALJ considered both his own observation of Pena and the observations of Pena's medical providers. Tr. 16, 551, 574, 734. Thus, the ALJ's reliance on Pena's demeanor was proper.

Finally, Pena argues that the ALJ failed to consider the extent to which Pena receives assistance from his wife with his day-to-day functioning. The Commissioner argues that Pena provided no evidence of his wife's assistance in the domain of interacting with others. The record shows that Pena's wife supports him by (1) reminding him of and driving him to his medical appointments; (2) intervening

when he becomes angry or agitated; (3) maintaining the household and finances; (4) caring for the children; and (5) reminding him to avoid alcohol, groom daily, dress, and take medicine. Tr. 447-449. As the Commissioner explains, this support is largely unrelated to Pena's interaction with others, aside from his children. However, the record suggests that the ALJ considered this as well as Pena's testimony. Although two independent state agency psychological consultants opined that Pena had a mild limitation, the ALJ concluded that based on "the evidence received at the hearing level, including the testimony of the claimant," the claimant has a moderate limitation. Tr. 16. That evidence included a third-party function report completed by Pena's wife describing the extent of her support for Pena, Tr. 271-278, as well as Pena's testimony describing some difficulty interacting with his co-workers in his last job. Tr. 63-64.

Accordingly, substantial evidence supports the ALJ's finding that Pena has moderate difficulty interacting with others.

### b. Pena's residual functional capacity to interact with others.

Step four of the sequential evaluation process involves the ALJ's assessing the claimant's residual functional capacity and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. An ALJ assesses a claimant's capacity for work despite physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must consider the medical opinions in conjunction with the other evidence and will consider every medically determinable impairment,

7

including impairments that are not severe, and the total limiting effect of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (*per curiam*) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

The Commissioner must consider the claimant's symptoms[1] and the extent to which these symptoms are consistent with the objective and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-9.

Pena asserts error in the ALJ's assessment of his residual functional capacity, specifically, the finding that Pena can have no interaction with the public but can occasionally interact with co-workers and supervisors. According to Pena, the ALJ failed to assess the difficulty that Pena would experience in responding to criticism from supervisors and in disagreeing with co-workers and otherwise failed to explain

---

[1] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

the basis for the ALJ's conclusion. The Commissioner responds that the ALJ possessed and articulated in his findings substantial evidence for the conclusion that Pena is capable of occasional interaction with co-workers and supervisors.

After evaluating the objective medical evidence, the ALJ concluded that Pena's sustained capacity to perform work is greater than he alleges. The ALJ relied on Pena's mental health treatment and other medical records, Tr. 19-20, 473, 414, 551, 574, 582, 734, as well as the opinions of two state agency consultants, who found that Pena was "not significantly limited" in his ability to interact socially. Tr. 120, 131. The opinion of Dr. Mercedes DeCubas says that Pena "can get along with others." Tr. 120. The opinion of Dr. Candace Mihm says that Pena "can relate adequately to co-workers and supervisors. He may perform best in a setting which does not require extensive interaction w/ the general public" because of his impairments. Tr. 131. As explained above, the ALJ ultimately found Pena's capacity for social interaction more limited based on Pena's mental status examinations and other evidence. However, this shows that the ALJ possessed substantial evidence supporting his conclusion that Pena could occasionally interact with co-workers and supervisors.[2]

---

[2] Pena's testimony at the hearing further supports some ability to interact with co-workers and supervisors. Tr. 63-64. When asked whether he could get along with his co-workers in his last job, he said "I just don't like the other questions about the war in Iraq." Tr. 63. When asked whether he had any difficulty taking instruction or criticism from his supervisors, he said "No. No, not really because I only had more detail to do. I mean, but it was just the fact that I had to go to the bathroom. He didn't like that too much." Tr. 64.

Pena cites *Bennett v. Comm'r Soc. Sec. Admin*, 2021 WL 1170234 (M.D. Fla. Mar. 29, 2021), and *Sharpe v. Comm'r Soc. Sec. Admin.*, 2022 WL 152229 (11th Cir. Jan. 18, 2022), and argues that the ALJ here committed the same error as in those cases. However, both *Bennett* and *Sharpe* are distinct. In *Bennett*, the claimant was unable to leave his house or his room and unable to focus because of auditory hallucinations. 2021 WL 1170234 at *1, *11. *Bennett* finds that the ALJ's residual functional capacity assessment failed to account for the claimant's social isolation, inability to leave his home independently, and his continued hallucinations. *Id.* at *11. *Bennett* also criticizes the ALJ's evaluation of expert opinions, both their consistency with each other and with the medical records. *Id.* at *10-*11. The ALJ "gave more weight to the opinions of consultants who *never* examined the [claimant] rather than to those who saw him more regularly[.]" *Id.* at 10.

Here, rather than "essentially adopt[ing]" the opinions of state agency psychologists, *id.* at *10, the ALJ found them only partially persuasive. The ALJ found that Pena's impairments created a greater obstacle to social interaction. Furthermore, the medical records in *Bennett* corroborated the allegations of extreme social isolation. *Id.* at *11. Here, the ALJ found that the medical evidence was not entirely consistent with the subjective statements of Pena and his wife. Tr. 18. Those medical records contained observations supporting the conclusion that Pena could engage in the type of social interaction necessary to occasionally interact with a supervisor or a co-worker. Tr. 120, 131, 414, 473, 551, 574, 582, 734.

In *Sharpe*, the ALJ concluded that the claimant could occasionally interact with a supervisor or a co-worker. 2022 WL 152229 at *6. This conclusion rested largely, if not entirely, on a report describing the claimant's periodic social anxiety several years before the relevant period. *Id.* *6. The evidence within the relevant period included (1) that over six years, the claimant left his house no more than a dozen times; (2) that his anxiety was so severe he could not leave his home to attend his daughter's high school graduation or his father's funeral; (3) that, after interacting with someone outside his family, the claimant would become so sick with agitation and anger that he spent days afterward in bed. *Id.* Thus, *Sharpe* finds a lack of substantial evidence supporting the ALJ's conclusion. *Id.* at *7.

Unlike the evidence in *Sharpe*, the medical evidence here supports the ALJ's conclusion that Pena is capable of occasional social interaction. This is not a case like *Bennett* or *Sharpe* or like *James W. v. Comm'r Soc. Sec. Admin.*, 2022 WL 17078899 (N.D. Ga. Mar. 29, 2022), where "every source who offered an opinion as to claimant's functional limitations noted his difficulties with co-workers and supervisors, as well as interacting with people in general, and found his ability to maintain social interactions and to work with supervisors, co-workers, and the general public was limited." *James*, 2022 WL 17018899 at *17. Here, the ALJ had substantial evidence, in the form of objective medical observations, to conclude that Pena could occasionally engage with others within the workplace.

### c. Dr. Villaverde's opinion and mental status examinations.

In determining Pena's residual functional capacity, the ALJ found unpersuasive the medical source statement signed by one of Pena's treating providers, Dr. Oscar Villaverde. Tr. 21-22. Pena argues that the ALJ lacked substantial evidence for this finding.

Under 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[] or prior administrative finding[]," including from a claimant's medical source. *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Rather, in assessing a medical opinion, an ALJ considers whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary considerations are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion. 20 C.F.R. § 404.1520c(c)(1).

The more consistent the medical opinion is with the evidence from other medical sources and non-medical sources, the more persuasive the medical opinion. 20 C.F.R. § 404.1520c(c)(2). The ALJ need only explain the consideration of these factors on a source-by-source basis. The ALJ need not explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Although the ALJ must explain how the ALJ considered the supportability and consistency

factors, the ALJ need not explain how the ALJ considered the other factors.[3] 20 C.F.R. § 404.1520c(b)(2).

Dr. Villaverde signed a medical source statement on November 1, 2021, in which he opined that Pena had a "markedly limited" ability to interact with others in a work environment. Tr. 19, 597-599. Pena visited with Dr. Villaverde on December 3, 2021, but the record contained no report from Dr. Villaverde after that day. Tr. 19. The ALJ found that Dr. Villaverde's opinion in the November 1, 2021, medical source statement was inconsistent both with his own treatment notes and with the mental status examinations of providers who treated Pena before and after December 3, 2021, when Dr. Villaverde's treatment of Pena ceased. Tr. 19-20.

Pena argues that the ALJ's reliance on mental status examinations was improper because PTSD "is principally diagnosed by signs and symptoms." Doc. 17, p. 16. At this stage of the ALJ's analysis the issue was not Pena's diagnosis of PTSD but how that diagnosis limits his ability to interact with others in the workplace. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work.")). Nothing cited by Pena supports the notion that periodic observations of a claimant's mental status are irrelevant to this inquiry. Furthermore, the mental status examinations by Dr.

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or earlier administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

Villaverde, as well as his other treatment notes, are certainly relevant to assessing the supportability and consistency of Dr. Villaverde's opinion about Pena's capacity for social interaction.

Pena further argues that the ALJ erred in saying that no reports by Dr. Villaverde showed a "clinical examination" of Pena. Doc. 17, p. 18. However, this statement appears directed to the June 29, 2021, and September 29, 2021, telephonic visits and not to all visits with Dr. Villaverde. Tr. 19. Although the treatment notes from those telephonic visits contain a mental status examination, Tr. 422-23, 430, those visit notes are far less comprehensive than the "objective" observations during Dr. Villaverde's in-person visit with Pena on November 1, 2021. Tr. 417-420. Thus, the phrase "clinical examination" [4] is rightly construed to mean a comprehensive, in-person examination by Dr. Villaverde, the type of which occurred on November 1, 2021, and not during the earlier telephonic visits.

Furthermore, substantial evidence supports the ALJ's conclusion about the inconsistency between Dr. Villaverde's November 1, 2021, opinion and both Dr. Villaverde's treatment notes and those of other providers. Dr. Villaverde's mental status examinations of Pena describe "clear and coherent speech," "organized" thought process, "good" insight and judgment, and an "okay" or "anxious at times" mood. Tr. 414, 417, 423, 430-31, 462. The examinations by other providers

---

[4] *See* W. DALLAS HALL, CLINICAL METHODS: THE HISTORY, PHYSICAL, AND LABORATORY EXAMINATIONS (3d ed. 1990), Chapters 207, 209, available at https://www.ncbi.nlm.nih.gov/books/NBK706/.

occurring both before and after Dr. Villaverde's November 1, 2021, opinion, including those Dr. Shippy and Dr. Brody, describe Pena's mood, behavior, speech as essentially normal. Tr. 19-20, 473, 551. Dr. Brody describes Pena on March 17, 2022, as being "appropriate, polite, pleasant, cooperative and able to [give] a clear concise, coherent medical history without apparent cognitive difficulties. Affect was normal without signs of depressive disorders and without signs of agitation, irritability or anxiety." Tr. 551. These observations provide substantial evidence from which the ALJ could find that Pena is not "markedly limited" in his ability to interact with others in the workplace. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### d. Pena's subjective complaints.

The Commissioner must consider a claimant's symptoms and the extent to which the symptoms "can reasonably be accepted as consistent with the objective evidence and other evidence." 20 C.F.R. §§ 404.1529, 416.929. A statement about pain or other symptoms is not conclusive evidence of disability, however. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom or (2) that one could reasonably expect the medical condition to cause the alleged symptom. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929.

Thus, the Commissioner considers whether a "medically determinable impairment . . . could reasonably be expected to produce" the symptom. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. The Commissioner then evaluates the intensity and persistence of the symptom to determine the extent to which the symptom limits the claimant's ability to perform work-related activity. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. A claimant's statement about the symptom is only one piece of the evidence considered. 20 C.F.R. §404.1529(c)(3). Other evidence includes the claimant's work record, medical records, daily activities, and medication. *Id.* In other words, the Commission evaluates a statement "in relation to the objective medical evidence and other evidence[.]" 20 C.F.R. §404.1529(c)(4).

When an ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. The "[f]ailure to articulate the reason for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* A reviewing court will not disturb a clearly articulated finding about a claimant's subjective complaints if supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*). In other words, the ALJ must provide more than a broad rejection but need not cite "particular phrases or formulations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Pena argues that the ALJ failed to provide a specific reason for discrediting Pena's testimony and failed to consider every "regulatory factor" under Section 404.1529(c)(3). Here, the ALJ found that the statements of Pena and his wife were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. The ALJ then discussed Pena's treatment records, the opinions of several state agency consultants, and Pena's service-connected disability rating. Tr. 18-22. The ALJ specifically and adequately described the basis for not entirely crediting Pena's and his wife's subjective statements. Contrary to Pena's argument, the ALJ neither broadly rejected Pena's subjective complaints nor failed to support his finding. Rather, the ALJ credited Pena's testimony, except as to the intensity, persistence, and limiting effect of Pena's symptoms. In doing so, the ALJ provided substantial evidence in support of his conclusion.

**V.      Conclusion**

Accordingly, for the reasons explained in this report, I recommend affirming the decision of the Commissioner.

REPORTED in Tampa, Florida, on this 18th day of October, 2024.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  If the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.